O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES RIVER INSURANCE COMPANY, an Ohio Corporation, | ) ) ) ) | Case No. CV 15-09972 DDP (JEMx) |
| Plaintiff, | ) ) | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |
| v. | ) ) | |
| STARR INDEMNITY AND LIABILITY COMPANY, a Texas Corporation, | ) ) ) | |
| Defendants. | | |

Presently before the court are three separate motions in two related cases concerning the potential exhaustion of a commercial liability insurance policy.[1]  Having considered the submissions of the parties, the court grants Plaintiff James River Insurance Company's Motion to Remand, vacates Defendant's Motion to Dismiss, and declines to exercise jurisdiction over the related case.

**I.   Background**

Plaintiff James River Insurance Company ("James River") issued a commercial general liability policy to Golden State Water Company

---

[1] The related case is <u>Starr Indemnity and Liabilty Co. v. James River Ins Co.</u>, CV-15-5781 DDP.

("Golden State") with a $1 million "property damage" limit. Defendant Starr Indemnity and Liability Company ("Starr") issued a $10 million excess policy to Golden State.

In July 2014, one of Golden State's water mains ruptured in Ojai, California.  The rupture caused severe water damage to several buildings, including the Ojai Playhouse ("the Theater"). James River, Golden State's primary insurer, determined that liability was likely, and began paying claims to affected property owners.  James River ultimately disbursed $1 million, the limit of Golden State's primary property damage coverage.  The bulk of those payments, just under $800,000, was made to the owners of the Playhouse.

Subsequent communications between James River and Starr, the excess carrier, revealed a dispute that underpins both this case and the related case.  Starr appears to contend that James River's payments to the owner of the Theater did not exhaust James River's $1 million coverage limit because they did not secure a release of claims from the owner of the Theater.  According to Starr, because such payments were not made in connection with "judgments or settlements," they do not count toward James River's $1 million limit nor relieve James River of its duty to defend Golden State.[2]

Seeking this court's imprimatur for that position, Starr filed the related action against James River, <u>Starr Indemnity and Liabilty Co. v. James River Ins Co.</u>, CV-15-5781 DDP CV 15-5781,

---

[2] Although the policy states that James River will pay damages resulting from "property damage," other language states that James River's "duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements . . . ."

under the Declaratory Judgments Act on July 30, 2015.  The amended complaint in that case now also names Golden State as a defendant. After the filing of Starr's suit, the owners of the Theater filed a tort action against Golden State in Ventura County Superior Court, Al Awar v. Golden State Water Co., No. 56-2015-00474589-CU-PO-VTA. James River defended, and is currently defending, Golden State in that suit, subject to a reservation of rights.  After taking up that defense, James River itself filed a declaratory judgment suit, the instant action, against Starr on November 17, 2015, also in Ventura County Superior Court.  Starr subsequently removed to this court on December 30, 2015.  James River now seeks remand of this case to state court, and argues that this court should abstain from exercising jurisdiction over Starr's suit in favor of allowing the state court to resolve the insurance coverage questions underlying both related cases presently before this court.

**II. Discussion**

   Although this court may exercise jurisdiction under the Declaratory Judgments Act, the decision whether to do so is a matter of discretion.  Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 802 (9th Cir. 2002); 28 U.S.C. § 2201-2202.  Relevant factors include, but are not limited to, avoiding needless determination of state law issues, dissuading forum shopping, and avoiding duplicative litigation.  Id. at 803 (discussing Brillhart v. Excess Ins. Co. Of Am., 316 U.S. 491 (1942).

   Of these factors, the issues raised here implicate questions primarily of comity and judicial efficiency.  James River contends that these suits ask this court to rule upon matters of insurance law that are purely state law questions, some of them matters of

first impression. James River further argues that this court's exercise of jurisdiction would result in piecemeal litigation and create the possibility of inconsistent judgments, as the underlying Al Awar tort suit must remain in state court. Starr takes the position that the cases before this court are totally unrelated to the state court tort action, and that this court need only apply well-settled state law.

The court is not persuaded that exercise of jurisdiction would be appropriate under the circumstances here. Starr itself acknowledges that it wants this court to rule whether James River exhausted its $1 million policy limit, and that resolution of that question would require the court to determine whether James River's payments to the Theater's owners were for "property damage" losses as defined in the James River policy. It is unclear to the court how that question is unrelated to the underlying Al Awar suit in state court. Although the Al Awar suit raises causes of action for negligence, trespass, nuisance, and inverse condemnation, any damages inquiry in that suit will necessarily address questions of property damage and the payments already made to the Theater's owners by James River, including state law questions regarding diminution in value, cost to rebuild, or other appropriate measures of damages.[3] Any attempt by this court to characterize James River's payments would be, at best, duplicative of the state court's efforts, even putting aside the risk of inconsistent outcomes.

---

[3] James River also asserts that these cases and Al Awar will require a court to determine whether required building code upgrades to the historic Theater qualify as "property damage."

4

Nor is the court persuaded by Starr's argument that the legal issues involved here are well-settled under state law. Although Starr cites numerous state cases for the proposition that an insurer's tender of policy limits does not relieve it of the duty to defend, the relevance of that authority is not entirely clear to the court. Here, James River does not appear to contend that it has no duty to defend Golden State in the underlying suit, and indeed, continues to defend its insured at the present time. Furthermore, although Starr attempts to characterize this dispute more narrowly, James River's suit, filed in state court, does not seek declaratory relief limited to its duty to defend, but rather to its duty to indemnify as well. Starr has not cited, nor is this court aware of, any California authority for the proposition that insurance payments made toward covered claims, absent a total release of those covered claims, cannot serve to exhaust policy limits. See Cal. Ins. Code § 11583. This court declines Starr's invitation to take up these issues of state law.

The need to discourage forum shopping does not play a significant role in this court's decision not to exercise jurisdiction. James River attempts to paint Starr's filing in this court as "reactive" because Starr filed shortly prior to a scheduled mediation between the Theater's owners and Golden State. James River does not appear to dispute, however, that it informed Starr that it had no intention of pursuing a declaratory judgment. It was therefore not unreasonable of Starr to pursue declaratory relief itself. Although James River raises some questions about Starr's good faith participation in the subsequent mediation, and resultant knowledge that a non-removable state court action was

sure to follow, this court need not address those allegations in detail in light of the weight of the other <u>Brillhart</u> factors against the exercise of jurisdiction.

**III. Conclusion**

For the reasons stated above, the court concludes that resolution of this action in this court would require the needless determination of state law issues and would be duplicative of, and possibly inconsistent with, state court proceedings. Accordingly, Plaintiff's Motion to Remand is GRANTED. Defendant's Motion to Dismiss is VACATED as moot.

IT IS SO ORDERED.

Dated:February 26, 2016

DEAN D. PREGERSON
United States District Judge